**STATE of Delaware, Plaintiff,**

v.

**Lenora SHEPPARD, Defendant.**

Supreme Court of Delaware.

Argued Dec. 11, 1974.

Decided Dec. 30, 1974.

Jeffrey M. Weiner, State Prosecutor, Wilmington, for plaintiff.

Arlen B. Mekler, Asst. Public Defender, Wilmington, and Jack Greenberg, James M. Nabrit, III, and David Evan Kendall, New York City, and Anthony G. Amsterdam, Stanford, Cal., for defendant.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.,

HERRMANN, Chief Justice:

This certification presents the question of the constitutionality of capital punishment under Delaware's new First Degree Murder Statute, 59 Del.L. Ch. 284 (approved by the Governor March 29, 1974), amending 11 Del.C. §§ 636 and 4209.*

---

* 59 Del.L. Ch. 284 provides:

"Section 1. Amend. § 636, Subchapter 11, Chapter 5, Title 11 of the Delaware Code, by striking said section in its entirety, and substituting in lieu thereof the following:

"§ 636. Murder in the First Degree

"A person is guilty of murder in the first degree when:

"(1) he intentionally causes the death of another person;

"(2) in the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, he recklessly causes the death of another person;

"(3) he intentionally causes another person to commit suicide by force or duress;

"(4) he recklessly causes the death of a law enforcement officer, Corrections employee or fireman while such officer is in the lawful performance of his duties;

"(5) he causes the death of another person by the use of or detonation of any bomb or similar destructive device;

"(6) he, with criminal negligence, causes the death of another person in the course of and in furtherance of the commission or attempted commission of rape, kidnapping, arson in the first degree, robbery in the first degree, or immediate flight therefrom;

"(7) he causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in furtherance of the commission or attempted commission of escape in the second degree or escape after conviction.

"Murder in the first degree is a Class A felony and shall be punished as provided in § 4209 of this Title.

"Section 2. Amend. § 4209, Chapter 42, Title 11 of the Delaware Code, by striking said section in its entirety, and substituting in lieu thereof the following:

"§ 4209. Method and punishment for First Degree Murder

"(1) In any case in which a person is convicted of first degree murder the Court shall impose a sentence of death. If the penalty of death is determined to be unconstitutional the penalty for first degree murder shall be life imprisonment without benefit of parole.

"(2) The imposition of a sentence of death shall be upon such terms and conditions as the Court may impose in its sentence, including the place, the number of witness and conditions of privacy. Punishment of death shall, in all cases, be inflicted by hanging by the neck, and the carrying out of such

## I.

The defendant is charged with murder in the first degree allegedly committed on May 18, 1974.

Stating that there has been no conviction under the 1974 First Degree Murder Statute to date and that, in the interest of justice, the constitutionality of that Statute should be settled by this Court at the earliest practicable time,[1] the Superior Court has sought and obtained certification of the following questions:

"1. Are the provisions governing punishment for first degree murder in 11 Del.C. § 4209 as amended on March 29, 1974, constitutional under Furman v. Georgia?[2]

"2. If the answer to question 1 is no, what sentence may be imposed?"

## II.

The 1974 Statute imposes a mandatory death penalty (11 Del.C. § 4209) for first degree murder as therein defined (11 Del. C. § 636).

In State v. Dickerson, Del.Supr., 298 A. 2d 761 (1972), this Court held that mandatory capital punishment, uniformly applied, was not invalidated by Furman v. Georgia; that a mandatory death penalty, uniformly applied, does not constitute "cruel and unusual" punishment under the Eighth Amendment of the Federal Constitution, or

"cruel" punishment under the Delaware Bill of Rights.[3]

In *Dickerson*, this Court stated: (298 A.2d at 767–768)

"As has been demonstrated, *Furman* does not hold that mandatory capital punishment *per se,* uniformly applied, is violative of the Eighth Amendment. The express reservations of Justices Stewart and White and the analyses contained in the dissenting opinions make that clear. Accordingly, we are satisfied that the mandatory death penalty of the Murder Statute, if uniformly applied, has not been invalidated by *Furman.*

"It is argued, however, that although it may not be specifically covered by the *Furman* decision, the mandatory death sentence nevertheless will constitute cruel and unusual punishment within the federal constitutional ban. We cannot agree.

"The United States Supreme Court has consistently acknowledged the constitutionality of capital punishment *per se,* either by assumption or assertion. * * *.

"And this Court has consistently rejected the contention that capital punishment *per se* constitutes 'cruel' or 'cruel and unusual' punishment within the constitutional bans. * * *:

\* \* \* \* \* \*

sentence may not be less than ten (10) days after the imposition of the sentence. The Court or the Governor may suspend the execution of the sentence until a later date to be specified, solely to permit completion of the process of judicial review of said conviction.

"Section 3. All offenses committed and all prosecutions commenced under the provisions of this Act prior to the effective date of this Act shall remain punishable and shall be prosecuted as previously provided and this Act shall not affect any rights or liabilities accrued, penalties incurred, or proceedings begun prior to the effective date of this Act.

"Section 4. If any provision of this Act or the application thereof to any person or circumstance, including any one or more of

the enumerated instances which constitute first degree murder is held unconstitutional or otherwise invalid, such unconstitutionality or invalidity shall not affect any other provision or application of this Act, and to that end the provisions of this Act are declared to be severable.

"Section 5. This Act shall become effective upon the signature of the Governor."

1. A number of other first degree murder cases are awaiting trial pending this decision.

2. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

3. Del.Const. Art. 1, § 11, Del.C.Ann.

"In the light of our consistent judicial policy, and the long history of capital punishment in this State from colonial times, we reaffirm the view that capital punishment *per se* is not violative of the constitutional guaranties against 'cruel' or 'cruel and unusual' punishment; and that the retention or abolition of capital punishment in this State is for the decision of the people of this State, speaking through their chosen representatives in the General Assembly."

We are asked by the defendant to reconsider the foregoing conclusions. We have done so in the light of the contentions raised here by the defendant: (1) *Furman* was not correctly interpreted in *Dickerson*; (2) there is a world-wide trend toward abolition of the death penalty; (3) there is a steady diminution of the number of executions in the United States; (4) there has been a general rejection of mandatory capital punishment, here and elsewhere; (5) there are increasingly accepted ethical and moral bases for rejection of capital punishment; (6) the secrecy surrounding executions shows society's abhorrence of the death penalty and is an argument for rejection; and (7) the paucity of executions everywhere demonstrates society's repudiation of capital punishment.

After the careful reconsideration this most important issue deserves, and after consideration of the arguments made here against capital punishment, many of which were heard and considered in *Dickerson*, we are of the opinion that the conclusions reached in *Dickerson* are correct. We reaffirm and adhere to those conclusions.

Since *Dickerson*, the Supreme Courts of three other States have considered the constitutionality of the mandatory death sentence in the light of *Furman*: State v. Jarrette, 284 N.C. 625, 202 S.E.2d 721 (1974); Jefferson v. Commonwealth, Va.Supr., 204 S.E.2d 258 (1974); State v. Hill, La.Supr., 297 So.2d 660 (1974). The results reached in all are consonant with the result reached in *Dickerson*.

III.

The foregoing impels the following answers to the questions certified:

(1) Assuming uniform application, the provisions governing punishment for first degree murder in 11 Del.C. §§ 636 and 4209, as amended March 29, 1974, are constitutional under Furman v. Georgia.

(2) We do not reach the question regarding the sentence alternative to the death sentence.

\*    \*    \*    \*    \*    \*

In concluding this discussion of the mandatory death provisions of the 1974 Statute, we consider appropriate a restatement of the caveat which was set forth by this Court in *Dickerson*: (298 A.2d at 769–770)

" \* \* \* the result reached here does not necessarily solve the problems created by the *Furman* decision for any state wishing to retain capital punishment. History shows that the mandatory death sentence for first degree murder is also open to caprice and discrimination in the imposition of the death penalty. The jury's route for the exercise of such caprice and discrimination, historically, is to return a verdict for a lesser-included offense carrying a lesser penalty. There was in this country, almost from the beginning, a 'rebellion against the common law rule imposing a mandatory death sentence on all convicted murderers'; juries took 'the law in their own hands' and refused to convict on the capital offense. The result was widespread legislative development of the discretionary death sentence throughout the country. See McGautha v. California, 402 U.S. 183, 198, 91 S.Ct. 1454, 1462, 28 L.Ed.2d 711 (1971).

"Obviously, any lack of uniform application—any discrimination or caprice in the imposition of the death sentence via the lesser-included offense route—will

expose the mandatory death penalty provision of the Murder Statute, hereby upheld, to the same condemnation as was accorded the Mercy Statute in the *Furman* case."