312 So.2d 329 (1975)
STATE of Louisiana
v.
Robert H. BLANTON, III.
No. 55672.
Supreme Court of Louisiana.
April 24, 1975.
Rehearing Denied May 30, 1975.
*330 Glynn A. Long, Donaldsonville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert D. Talbot, Dist. Atty., A. J. Kling, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was indicted and tried for murder R.S. 14:30. (Blanton was indicted jointly with Mavis Hodgeson and C. A. Martello, but tried separately). He was found guilty and sentenced to life at hard labor. On appeal he urges fourteen Specifications of Errors.
The State alleged that Mavis Hodgeson procured and hired the defendant through an intermediary, C. A. Martello, to "soften up" Eugene Stevens who had been formerly married to Mavis Hodgeson's daughter, Glenda Hodgeson Stevens. Glenda Stevens had been granted custody of Eugene Stevens' son, and there was controversy over visitation of the child by Eugene Stevens. On February 16, 1972 Mavis Hodgeson and her daughter had been ordered to show cause on March 1 why they should not be held in contempt for violating previous court orders that Eugene Stevens be permitted to see his son. On February 21, 1972 Robert Blanton, Robert Clayton and Celia Manor Harris killed Eugene Stevens. When Mavis Hodgeson refused to pay the agreed amount plus interest, defendant, in the company of Joyce Wilson and J. W. Wallace, fired shots into the home of Mavis Hodgeson on the morning of November 5, 1972 to demonstrate to her that the defendant was serious in collecting the money due him. Mavis Hodgeson's conviction for manslaughter was affirmed by this court in State v. Hodgeson, 305 So.2d 421 (La.1974).
Specifications of Errors Nos. 4-8
These specifications are based on Bills of Exceptions Nos. 2-7, and deal with challenges for cause by the defendant, denied by the trial court.
*331 The grounds for challenge for cause are:
"The state or the defendant may challenge a juror for cause on the ground that:
"(1) The juror lacks a qualification required by law;
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
"(4) The juror will not accept the law as given to him by the court; or
"(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense." C.Cr.P. 797.
Defendant contends that Reginald Roberts should have been challenged for cause for the reason that he "would require the defendant to take the stand or put some evidence on in his behalf." Roberts, in answer to a question, said that it would "look odd" if the State put on numerous witnesses and much evidence of all kinds, and the defendant did not put on any evidence.
The juror answered the question frankly. The entire voir dire examination, however, does not support defendant's contention that he would not accept the law as given him concerning the presumption of innocence and the necessity that the State prove the defendant's guilt beyond a reasonable doubt. State v. Normand, 298 So.2d 823 (La.1974); State v. Jefferson, 284 So.2d 882 (La.1973); State v. Frazier, 283 So.2d 261 (La.1973).
Paul M. Carpenter was challenged by the defendant because he was related to the victim. Mr. Carpenter testified that he was a distant relative of the victim; he believed the victim had been a third cousin. He testified that he did not know of any reason which would prevent him from serving as a fair and impartial juror. The voir dire examination contains no testimony from which it would be reasonable to conclude that this distant relationship would influence the juror in arriving at a verdict. State v. Hodgeson, supra.
John I. Lessard was challenged because an associate of the defense counsel had initially represented Lessard's wife in a divorce action against Lessard. However, there was no showing that this relationship would in any way influence the juror or affect his decision.
Roland Mayers and Buren J. Gautreau were challenged during the selection of an alternate juror. As the alternate juror eventually selected was dismissed prior to deliberations and played no part in the reaching of a verdict, defendant could not have suffered any prejudice from the selection of the alternate juror. Moreover, the relationship of these prospective jurors to the family of the decedent, to an assistant prosecutor and the sheriff was not such as to cause partiality, and the examination disclosed no grounds for challenge for cause.
These specifications are without merit.
Specifications of Errors Nos. 9 and 10
These specifications were based upon the introduction of the record of the civil suit entitled "Glenda Hodgeson Stevens *332 v. Edward Eugene Stevens," Docket No. 16,876, Twenty-Third Judicial District Court, Ascension Parish. Additionally, the trial judge in that suit, involving the divorce of the parties and the custody of their child, testified concerning the judgment he rendered in that suit. As noted in Hodgeson, supra, the record and testimony were relevant to show the motive behind the conspiracy which resulted in the death of the victim. It was important to explain to the jury not only that the defendant was to be paid for his actions but also the motive of his employer.
These specifications are without merit.
Specifications of Errors Nos. 11 and 12
During the trial C. A. Martello, who had been jointly indicted with defendant and Hodgeson, but who had turned State's evidence, and who had been the intermediary between Mavis Hodgeson and the defendant, was permitted to relate to the jury what had been said to him by Mavis Hodgeson and Robert Clayton. Defendant contended that the testimony was hearsay and inadmissible. At trial it was established that Mavis Hodgeson had initiated the conspiracy and that Robert Clayton had participated in the killing of the victim by firing the fatal shot. The statements of these conspirators concerning employment and compensation were made in the furtherance of the murder conspiracy and were admissible under R.S. 15:455. State v. Hodgeson, supra; McCormick on Evidence, § 267 (2d Ed. 1972).
These specifications are without merit.
Specification of Error No. 13
This specification concerns the scope of questioning of J. W. Wallace. According to the testimony of J. W. Wallace, he was asked by the defendant to deliver a message to Mavis Hodgeson on the afternoon of the L.S.U.-Ole Miss. football game. He was to tell Mavis Hodgeson that "her contract had been completed and she owed $1,500.00." The witness delivered the message and subsequently participated in the shooting of her house at about 1:00 o'clock the next morning. This testimony was relevant to prove the existence of a continuing conspiracy and intent of the defendant. The basis of the objection is not clear, but was probably to questioning calling for a narrative answer. No inadmissible testimony came in as a result.
This specification is without merit.
Specifications of Errors Nos. 1-3
These specifications are based upon the introduction of evidence of the shooting of Mavis Hodgeson's home with a high powered rifle after she had refused to pay the defendant. The defendant contended that this later crime, occurring approximately seven months after the crime charged, was unrelated and its introduction caused him undue prejudice. In the alternative, defendant argued in his motion for a new trial that he was entitled to notice (in accordance with State v. Prieur, 277 So.2d 126 (La.1973)) that the State intended to introduce evidence of the later shooting. The evidence was clearly admissible to prove the continuing and evolving conspiracy and the relationship among the parties. The probative value of the evidence was great, and there was no undue prejudice to the defendant. The failure of the State to give proper notice was raised after trial and not at the time of the admission of the evidence; the objection was not timely.
These specifications are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs.